IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARYLE MCNELIS,    :  Case No. 4:13-CV-02612
         :
   Plaintiff,    :  (Judge Brann)
         :
   v.      :
         :
PENNSYLVANIA POWER &amp;  :
LIGHT, SUSQUEHANNA, LLC,  :
         :  (Magistrate Judge Schwab)
   Defendant.   :

**MEMORANDUM**
September 19, 2016

   Before the Court for disposition are Defendant Pennsylvania Power & Light, Susquehanna, LLC's (hereinafter "PPL") Motion for Summary Judgment and Motion to Preclude Plaintiff's Expert.[1]  Magistrate Judge Susan E. Schwab has prepared a Report and Recommendation concerning these matters.  For the following reasons, this Report and Recommendation will be adopted in its entirety. Defendant Pennsylvania Power & Light, Susquehanna LLC's Motion for Summary Judgment will be granted.  Because Defendant is entitled to summary judgment on all claims, Defendant's Motion to Preclude Plaintiff's Expert is denied as moot.

---

[1] Also pending before the Court are Defendant's Motion to Strike Plaintiff's Untimely Reply and Plaintiff's Motion For Leave to File His Reply Brief Out of Time.  These Motions relate to Plaintiff's untimely Reply Brief to Defendant's Response to Plaintiff's Objections.  Having reviewed the briefs filed concerning these motions and cognizant that the Report and Recommendation advises the dismissal of Plaintiff's entire case, the Court has considered Plaintiff's Reply Brief.  The attached Order addresses the disposition of these Motions.

## I.      BACKGROUND/PROCEDURAL HISTORY

The extensive factual background and procedural history of this case is set forth in thorough detail in Judge Schwab's Report and Recommendation and is adopted by this Court.

## II.      LEGAL STANDARD
## A. REPORT AND RECOMMENDATION

Upon designation, a magistrate judge may "conduct hearings, including evidentiary hearings, and ... submit to a judge of the court proposed findings of fact and recommendations."[2]  Once filed, this Report and Recommendation is disseminated to the parties in the case who then have the opportunity to file written objections.[3]  When objections are timely filed, the District Court must conduct a *de novo* review of those portions of the report to which objections are made.[4] Although the standard of review for objections is *de novo*, the extent of review lies within the discretion of the District Court, and the court may otherwise rely on the recommendations of the magistrate judge to the extent it deems proper.[5]

For portions of the Report and Recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no

---

[2] 28 U.S.C. 636(b)(1)(B).
[3] 28 U.S.C. 636(b)(1).
[4] 28 U.S.C. 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011).
[5] *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

clear error on the face of the record in order to accept the recommendation."[6]

Regardless of whether timely objections are made by a party, the District Court

may accept, not accept, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge.[7]

### B. SUMMARY JUDGMENT

Summary judgment is appropriate where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."[8]  A fact is "material" where it "might affect the outcome of the suit

under the governing law."[9]  A dispute is "genuine" where "the evidence is such

that a reasonable jury," giving credence to the evidence favoring the nonmovant

and making all inferences in the nonmovant's favor, "could return a verdict for the

nonmoving party."[10]

The burden of establishing the nonexistence of a "genuine issue" is on the

party moving for summary judgment.[11]  The moving party may satisfy this burden

by either (i) submitting affirmative evidence that negates an essential element of

---

[6] Fed.R.Civ.P. 72(b), advisory committee notes; *see also Univac Dental Co. v. Dentsply Intern., Inc.,* 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)) (explaining that judges should give some review to every report and recommendation).

[7] 28 U.S.C. § 636(b)(1); Local Rule 72.31.

[8] Fed. R. Civ. P. 56(a).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[10] *Id.*

[11] *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).

the nonmoving party's claim; or (ii) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.[12]

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[13]  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[14]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[15]  Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's

---

[12] *Id.* at 331.

[13] *Anderson*, 477 U.S. at 250.

[14] Fed. R. Civ. P. 56(c)(1); *see also Anderson*, 477 U.S. at 248–50.

[15] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co*., 311 F.3d 226, 233 (3d Cir. 2003).

assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[16]

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.[17] Credibility determinations are the province of the factfinder, not the District Court.[18] Although the court may consider any materials in the record, it need only consider those materials cited.[19]

## III.   DISCUSSION

Having reviewed those portions of the Report to which no objections were made, the Court is satisfied that, on its face, the Report and Recommendation has no clear error.  Furthermore, following a *de novo* review of those portions of the report to which an objection was made, the Court will adopt the Report and Recommendation in its entirety and thus grant Defendant's Motion for Summary Judgment.  Defendant's Motion to Preclude Plaintiff's Expert will be denied as moot.  Plaintiff's specific objections to the Report and Recommendation and this Court's findings in response will be discussed in detail below.

---

[16] Fed. R. Civ. P. 56(e)(2).
[17] *Anderson*, 477 U.S. at 249.
[18] *BWM, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).
[19] Fed. R. Civ. P. 56(c)(3).

**1. The Report and Recommendation Did Not Err In Finding that McNelis Was Not a "Qualified Individual"[20]**

Plaintiff first objects to the Report and Recommendation's finding that he was not a "qualified individual" as required to establish a prima facie case under the ADA, RA, and PHRA.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[21]   When the plaintiff's allegations of intentional discrimination are supported only by circumstantial evidence, the Court must follow the *McDonnell-Douglas*[22] burden-shifting framework.  That analysis proceeds as follows:

> First, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.[23]

---

[20] All discussion specifically references the ADA.  However, this Court's conclusions and their accompanying reasoning apply equally to the RA and PHRA.  *See Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (noting that the Rehab Act, ADA, and PHRA are to be interpreted consistently, and with the same standard for determination of liability).

[21] 42 U.S.C. § 12112(a).

[22] 411 U.S. 792, 802–804 (1973).

[23] *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999) (quoting *McDonnell Douglas*, 411 U.S. at 802).

A prima facie case of disability discrimination – the first step of the *McDonnell-Douglas* framework – requires that plaintiff establish (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination.[24]

Here, Plaintiff objects to the Report and Recommendation's finding that he cannot show that he was qualified for the position of Nuclear Security Officer. Specifically, Plaintiff argues that the Report erred because (1) a temporary loss of access does not mean as a matter of law that an individual is not qualified, (2) a jury could find, based on discharge instructions from Geisinger Medical Center, that Plaintiff was qualified, and (3) the prima facie case of disability discrimination is no longer relevant once the employer has filed a motion for summary judgment with an asserted legitimate, nondiscriminatory reason.[25]

When establishing a prima facie case of disability discrimination, a plaintiff is found to be qualified when "with or without reasonable accommodation, [they] can perform the essential functions of the employment position that such individual holds or desires."[26]  The determination of whether a plaintiff is a "qualified

---

[24] *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).
[25] Pl.'s Objections to the Magistrate's Report and Recommendation ("Objections"), at 3-9.
[26] 42 U.S.C. 12111(8).

individual" at the time of the adverse employment action follows a two-step

analysis:

> First, a court must consider whether "the individual satisfies the
> prerequisites for the position, such as possessing the appropriate educational
> background, employment experience, skills, licenses, etc." Second, the
> court must consider "whether or not the individual can perform the essential
> functions of the position held or desired, with or without reasonable
> accommodation."[27]

The plaintiff has the burden under this analysis of showing that he was qualified at

the time of the adverse employment action.[28]

Addressing Plaintiff's first argument that a temporary loss of access does not

mean that an individual is not qualified, the Court finds this objection to be without

merit. Specifically, the Court notes that case law within the United States Court of

Appeals for the Third Circuit and elsewhere has specified that a failure to maintain

UAA (unescorted access authorization) renders an employee unqualified, as a

matter of law, to work in a nuclear power industry.[29] Plaintiff attempts to conceal

this principle by arguing that PPL's policy permitted him an opportunity to prove

---

[27] *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998) (quoting 29 C.F.R. pt. 1630,
App. at 353-54). In determining the essential functions of a position, an employer may "require
that employees employed in sensitive positions comply with the regulations (if any) of . . . the
Nuclear Regulatory Commission. 29 C.F.R. § 1630.16(b)(6).

[28] *Id.*

[29] *See McCoy v. Pennsylvania Power & Light Co.*, 933 F. Supp. 438, 443 (M.D.Pa. 1996); *Sysko
v. PPL Corp.*, No. 3:07-CV-0470, 2009 WL 4725240 at *11 (M.D.Pa. Dec. 2, 2009); *Lute v.
Dominion Nuclear Connecticut, Inc.*, No. 3:12-CV-01412, 2015 WL 1456769, at *11 (D.Conn.
Mar. 30, 2015); *Wetherbee v. Southern Nuclear Operating Co., Inc.*, No. 1:08-CV-2138, 2010
WL 11428172, at *7 (N.D.Ga. Mar. 17, 2010).

that he was not unfit for duty.[30]   Such an attempt is, however, unpersuasive given the well-settled case law which holds that loss of UAA renders an employee within the nuclear power industry unqualified for purposes of the ADA.   Here, it is undisputed that Plaintiff's UAA was revoked.[31]   At that time, he became unqualified for his position as a Nuclear Security Officer Level II.

Plaintiff further objects by arguing that, based on discharge instructions from Geisinger Medical Center, a jury could reasonably find that Plaintiff was qualified for his position at the time of the adverse employment action.   Again, however, the Court finds that this argument contradicts established law.   Specifically, like the Report and Recommendation, this Court finds that Plaintiff has failed to identify facts of record which indicate that Geisinger was qualified under the Nuclear Regulatory Commission regulations to make such a determination.[32]   Therefore, the Court finds that Geisinger's discharge instructions do not present a genuine dispute of material fact as to Plaintiff's qualification.

---

[30] Objections, at 4.

[31] Def. PPL Susquehanna LLC's Statement of Uncontested Material Facts ("Def.'s SUMF") ¶ 119, at 23.

[32] *See* 10 C.F.R. § 26.189(a)  ("A determination of fitness must be made by a licensed or certified professional who is appropriately qualified and has the necessary clinical expertise, as verified by the licensee or other entity, to evaluate the specific fitness issues presented by the individual."); *see also Exelon Generation Company, LLC v. Local 15, International Brotherhood of Electrical Workers, AFL-CIO,* 140 F. Supp. 3d 751, 763 (N.D. Ill. 2015) (noting that Section 26.189 stipulates that "a party may not seek a determination of fitness from someone other than the authorized SAE").

Finally, Plaintiff argues that a discussion of qualification is moot because, once a defendant has adduced a legitimate, nondiscriminatory reason, the prima facie case "drops out of the picture."  In support thereof, Plaintiff cites *Reeves v. Sanderson Plumbing Prods., Inc.*[33] and *U.S. Postal Serv. Bd. Of Governors v. Aikens*.[34]  The Plaintiff's citation to and interpretation of these cases is inapposite.

First, in *Reeves*, the Supreme Court noted that it is the "**presumption of discrimination** [that] "drops out of the picture" once the defendant meets its burden of production," not the prima facie case.[35]  Second, Plaintiff distorts the holding in *Aikens*, which held and reaffirmed that, once the defendant has introduced a legitimate nondiscriminatory reason, the presumption of discrimination "drops from the case," and the District Court is "in a position to decide the ultimate factual issue."[36]

Having reviewed *de novo* whether Plaintiff was a "qualified individual," I find that the Report and Recommendation did not err in finding that Plaintiff failed to establish a prima facie case of disability discrimination under the ADA, PHRA, and RA.

---

[33] 530 U.S. 133, 143 (2000).
[34] 460 U.S. 711 (1983).
[35] *Reeves,* 530 U.S. at 143.
[36] *Aikens*, 460 U.S. at 714.

**2. The Report and Recommendation Did Not Err In Determining That A Reasonable Jury Could Not Find That PPL's Legitimate, Non-Discriminatory Reasons Were Pretextual**

Plaintiff next objects to the Report and Recommendation's determination that a reasonable jury could not find that PPL's firing of McNelis was pretextual.

As noted above, the three-step *McDonnell-Douglas* framework requires that, once the defendant has adduced a legitimate, non-discriminatory reason, the burden of production and persuasion again rests with the plaintiff to prove that this reason is simply pretext for unlawful discrimination.[37]  Plaintiff argues specifically in his second objection that PPL's legitimate discriminatory reasons were pretext because 1) McNelis did not refuse to answer questions about the lockdown, and 2) there was a delay between Plaintiff's April 17, 2012 conversation with Jim Gorman, Manager of Nuclear Security, and his ultimate termination.

The Court finds these objections to be without merit.  Specifically, concerning the issue of "evasiveness," the Court notes that Plaintiff had a duty to self-report "fitness for duty issues."[38]  Issues which require this reporting include, among other things, "impairment from fatigue or any cause that, if left unattended, may constitute a risk to public health and safety or the common defense and

---

[37] *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08 (1993) (quoting *Tex. Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).
[38] Def.'s SUMF ¶ 16, at 5.

security."[39]   Fatigue is, thereafter, defined as "[t]he degradation in an individual's

cognitive and motor functioning resulting from inadequate rest."[40]   Here, the

undisputed facts indicate that Plaintiff was suffering from fatigue during the

telephone conversation with Mr. Gorman and failed to "self-report" these issues.

The Court notes that Plaintiff admitted himself to Geisinger Medical Center on

April 18, 2012 with "sleeplessness," "1-2 weeks of paranoid thoughts," and

"questionable auditory hallucinations."[41]   Because of the revelation that such

symptoms had been ongoing for two weeks, it is clear that Plaintiff was

experiencing symptoms requiring self-reporting and that he failed to do so either

during his April 17, 2012 conversation with Mr. Gorman, or at any time prior.[42]

His failure, therefore, to timely report these issues constitutes a violation of known

PPL policy.[43]

Second, Plaintiff argues that Mr. Gorman's delay in terminating Plaintiff for

evasiveness at the April 17, 2012 meeting demonstrates pretext.  However, given

the Behavior Observation Program ("BOP") established by PPL in accordance

with Nuclear Regulatory Commission ("NRC") regulations, it is difficult to grasp

how such a failure demonstrates pretext.  Plaintiff supports his contention by citing

to Jeff Helsel's deposition in which he stated that he was unaware of anyone who

[39] Id. ¶ 7, at 3.
[40] Id. ¶ 13, at 5.
[41] Id. ¶ 70-71, at 15.
[42] Id. ¶¶ 62-68, at 13-14.
[43] Id. ¶ 16, at 5.

12

was uncooperative when questioned by management, but then allowed to go through the BOP process.[44]  However, a full analysis of Mr. Helsel's deposition reveals that he next stated that, even with the occurrence of evasive answers, he would "expect that [BOP] process to be completed."[45]

Finally, in support of his theory of pretext, Plaintiff cites to *Fuentes v. Perskie*,[46] in which the Third Circuit noted the "difficult burden" on Plaintiff at the pretext stage of the *McDonnell-Douglas* framework.  Specifically, the *Fuentes* Court noted that the plaintiff's evidence of pretext "must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action."[47]  In the case at bar, Plaintiff's evidence of pretext has failed to allow for such an inference.  Specifically, the Court finds that the evidence adduced by Plaintiff would not allow a factfinder "reasonably to infer" that Defendant's legitimate nondiscriminatory reasons were either a fabrication or a non-motivator of the employment action.

---

[44] Objections, at 12.

[45] Helsel Dep. 56:13-14.

[46] *Fuentes v. Perskie*, F.3d 759, 765 (3d Cir. 1994).

[47] *Id.* The Third Circuit in *Fuentes* further noted that, to avoid summary judgment, a "non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action **that a reasonable factfinder *could* rationally find them "unworthy of credence,"** (citation omitted), and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* at 765 (emphasis added).

Having reviewed *de novo* the factual record concerning Plaintiff's second objection, the Court finds that Plaintiff has failed to produce evidence demonstrating that Defendant's legitimate, non-discriminatory reasons were pretext. The Report and Recommendation therefore did not err in determining that a reasonable jury could not find that PPL's legitimate, non-discriminatory reasons were pretextual.

    **3.  The Report and Recommendation Did Not Err In Finding That Helsel's Testimony That the Rumors of McNelis' Use of Illegal Drugs Were Not Discussed in the SEARP Was an Undisputed Fact[48]**

Plaintiff next objects to the Report and Recommendation's finding that Jeff Helsel's testimony stating the Susquehanna Elevated Action Review Panel (SEARP) did not consider allegations of McNelis' prior drug use was an undisputed fact.

Plaintiff specifically argues that, although there is no evidence within the factual record contradicting this testimony, it should nonetheless be considered a disputed fact. In support of this proposition, Plaintiff argued that 1) under *Reeves v. Sanderson Plumbing Prods., Inc.*, he did not have to produce evidence contradicting Helsel's testimony, and 2) the Court is not bound by the Third

---

[48] Plaintiff first makes the argument in his third objection that PPL "rigged the BOP process" by failing to investigate or inform Dr. Thompson of the allegations that Plaintiff was using bath salts. Like the Report and Recommendation, this Court finds that acceptance of this omission as evidence of pretext requires not only viewing the evidence in the light most favorable to Plaintiff, but also suspending reason in favor of the Plaintiff. This Court therefore agrees with the finding of the Report and Recommendation concerning this issue.

Circuit case of *Lauren W. v. DeFlaminis*[49] to the extent it contradicts *Reeves*.  The

Court finds both of these objections to be without merit.

Like the Report and Recommendation, I note the many cases within the

Third Circuit which have rejected an interpretation of *Reeves* which precludes

reliance on undisputed evidence from an interested witness at the summary

judgment stage.[50]  Furthermore, to the extent that Plaintiff argues that *DeFlaminis*

should not be followed, the Court notes that it has previously addressed the balance

between *Reeves* and *DeFlaminis*.  Specifically, in *Edgerton v. Wilkes-Barre Home

Care Services, LLC*, the Court stated:

> The Third Circuit's opinion in *Schoonejongen v. Curtiss–Wright Corp.*, 143
> F.3d 120 (3d Cir.1998), considers the issue at length, and reasons that,
> contrary to Ms. Edgerton's position, a nonmoving party cannot defeat
> summary judgment by raising the mere possibility that the jury may
> disbelieve a witness's testimony. (Citations omitted). To successfully oppose
> a summary judgment motion, the nonmoving party must, rather, point to
> circumstances revealed by the record as a whole that might cause a
> reasonable jury to doubt the facts (supported by testimony) asserted by the
> movant. (Citations Omitted).[51]

---

[49] *Lauren W. v. DeFlaminis*, 480 F.3d 259 (3d Cir. 2009).

[50] *See, e.g., Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007) (stating that "in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness"); *Wilkie v. Geisinger Sys. Servs.*, No. 3:12-CV-580, 2014 WL 4672489, at *5 (M.D. Pa. Sept. 18, 2014) (Mariani, J.) (rejecting the plaintiff's argument that under Reeves, the court cannot consider any statements from interested witnesses); *Phinizy v. Pharmacare*, 569 F.Supp.2d 512, 518 (W.D.Pa. 2008) (Cercone, J.).

[51] *Edgerton v. Wilkes-Barre Home Care Services, LLC*, 2014 WL 131605, at *2 (M.D.Pa. Jan. 13, 2014), *aff'd* 600 F.App'x 856 (3d Cir. 2015).

That decision was affirmed on appeal.  The Court sees no reason to abandon both this reasoned conclusion and Third Circuit precedent in the instant case. Therefore, in the absence of evidence sufficient to "cause a reasonable jury to doubt the facts" of his testimony, the Court will adopt the Report and Recommendation's conclusion that Helsel's testimony concerning the SEARP was an undisputed fact.

**4.  The Report and Recommendation Did Not Err In Finding That McNelis Lost the Right to Challenge Thompson's Credibility By Not Doing So At His Own Deposition**

Plaintiff next argues that the Report and Recommendation erred in finding that he lost his right to challenge Dr. David Thompson's credibility by not doing so at his deposition.  In support of this proposition, Plaintiff repeats an argument addressed and rejected by the Report and Recommendation, i.e. that he has shown that "a reasonable jury could find that Thompson's good faith and credibility are subject to error."[52]  Plaintiff, however, admitted in his deposition that he has no evidence to indicate that Dr. Thompson did not act in good faith.[53]  Furthermore, since the deposition, he has otherwise failed to adduce any additional evidence bringing Dr. Thompson's conduct into doubt.  Therefore, based on the lack of evidence demonstrating a genuine dispute as to material fact, the Court finds that the Report and Recommendation did not err in finding that Dr. Thompson's

---

[52] Objections, at 22.
[53] Def.'s SUMF ¶ 114, at 22.

determination was made in good faith and/or in the exercise of his best medical judgment.

### 5.   The Report and Recommendation Did Not Err In Finding That The Timing of Thompson's "Unfit for Duty" Determination Was Not Suspicious

Plaintiff next objects to the Report and Recommendation's finding that Thompson's "unfit for duty" determination was not suspicious.[54]  Specifically, Plaintiff argues that, because PPL employee Kris Lear was informed by Nick Steward on April 30, 2012 that a reliable source had told him that Plaintiff was using bath salts, Dr. Thompson's Substance Abuse Expert (SAE) Determination of Fitness of May 1, 2012 was influenced by this new allegation and thus, suspicious.

The Court however, finds two flaws with this argument.  First, I find no credence to the "distinction without a difference" argument advanced by Plaintiff which suggests that Dr. Thompson changed one single report from day to day.  In this BOP referral process, the undisputed facts establish that Dr. Thompson made two separate reports: first, the Confidential Interview Memo of April 30, 2012, and second, the Substance Abuse Expert Determination of Fitness on May 1, 2012.[55] Furthermore, Plaintiff has adduced no evidence contradicting the testimony of Lear in which he stated that he did not tell management of the allegations.[56]  Plaintiff

---

[54] Objections, at 22-23.
[55] Def.'s SUMF ¶¶ 95, 108, at 19, 21.
[56] Pl.'s Statement of Additional Material Facts ("Pl.'s SAMF") ¶ 58, at 9.

instead argues within his objections[57] that the Report and Recommendation erred because there is evidence that John Lines told Dr. Thompson about the prior allegations of drug use before the MMMPI test on April 24, 2012.[58]  Dr. Thompson, however, has no recollection of being told about the bath salt allegations.[59]  Assuming for the sake of argument that Lines did in fact tell Dr. Thompson of the drug use allegations, the Court finds it illogical to suggest that a new report of alleged drug use by Nick Steward, in addition to prior known allegations, would in any way alter the judgment of Dr. Thompson.[60]

Having reviewed *de novo* the factual record relating to Plaintiff's objection, this Court does not find error in the Report and Recommendation's conclusion that the timing of Dr. Thompson's "unfit for duty" determination was not suspicious.

### 6.  The Report and Recommendation Did Not Err In Finding That R.S. And S.W. Were Not Proper Comparators to McNelis

Plaintiff argues next that the Report and Recommendation erred in finding that R.S. and S.W. were not proper comparators to McNelis.

The Report and Recommendation had found that R.S. and S.W., who were not terminated following loss of unescorted access authorization, were not proper

---

[57] Objections, at 23.

[58] Lines Dep. 44: 22–45: 3; 46: 10-24.

[59] Pl.'s SAMF 105, at 15.

[60] Furthermore, to the extent Plaintiff argues that Lines exerted pressure on Thompson to change his determination based on the bath salt usage allegations, the Court notes that Dr. Thompson in his declaration denied any such interference by Defendant PPL. Thompson Decl. ¶ 7.  Plaintiff has failed to adduce anything other than allegations to dispute this declaration.

comparators because they self-reported their fitness for duty issues.[61]  Plaintiff, however, contests this finding by arguing that he was unable to self-report because 1) he knew nothing about the school lockdown prior to his April 17, 2012 phone call with Jim Gorman, 2) he did not refuse to answer Jim Gorman's questions and later got back to Gorman concerning the lockdown, and 3) he did self-report to PPL his need for inpatient therapy for sleep issues prior to his return to work.[62]

The Court finds these arguments to be without merit.  Specifically, as discussed in depth in response to the second objection, Plaintiff's failure to self-report did not involve the school lockdown, but rather his continued issues with sleeplessness and paranoid thoughts.  As previously explained, the discharge notice from Geisinger Medical Center noted that such symptoms had persisted from one to two weeks prior to his inpatient hospitalization.[63]  Therefore, Plaintiff's argument that he did not fail to self-report holds no weight.  The undisputed facts demonstrate that, prior to his inpatient admission on April 18, 2012, Plaintiff was experiencing sleeplessness and paranoid thoughts.  There is no evidence in the record indicating that he self-reported these fitness for duty issues.

Therefore, because this Court finds that there is no evidence in the factual record indicating that Plaintiff self-reported his known fitness for duty issues, I

---

[61] Report and Recommendation, at 89.
[62] Objections, at 24.
[63] Def.'s SUMF ¶ 71, at 15.

conclude, like the Report and Recommendation, that R.S. and S.W. were not proper comparators.

### 7. The Report and Recommendation Did Not Err in Finding That There is No Genuine Dispute As to Material Fact Concerning McNelis' FMLA Interference and Retaliation Claims

Finally, Plaintiff argues that the Report and Recommendation erred in finding that Defendant was entitled to summary judgment on both his FMLA interference and retaliation claims.

Plaintiff first objects to the Report and Recommendation's finding that Defendant is entitled to summary judgment on the Plaintiff's FMLA interference claim. The interference clause of the FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA.[64] To establish an FMLA interference claim, an employee must specifically establish that: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA."[65]

---

[64] 29 U.S.C. § 2615(a)(1).
[65] *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014).

Although the FMLA generally requires that an employee be restored to his position following FMLA leave, "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."[66] Therefore, the failure to restore plaintiff employee to his pre-leave position does not constitute a violation of the FMLA "if the employee remains unable to perform an 'essential function' of the position."[67]

Here, Plaintiff objects to the finding of the Report and Recommendation that, because of his loss of unescorted access authorization (UAA), he was no longer able to perform an "essential function" of his position as a Nuclear Security Officer II.[68]   The Court, following the detailed analysis above, found that UAA was an "essential function."   Therefore, Plaintiff's loss of UAA prior to his request for FMLA paperwork[69] rendered him outside the protection of the interference clause.

Plaintiff next objects to the Report and Recommendation's finding that Defendant is entitled to summary judgment on the Plaintiff's FMLA retaliation claim.   "[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the

---

[66] 29 C.F.R. §825.216(a).
[67] *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 254 (3d Cir. 2014) (quoting 29 C.F.R. §825.216(c)).
[68] Objections, at 25.
[69] Def.'s SUMF ¶¶ 52-53, at 28-29.

employee."[70]  To succeed on a retaliation claim under the FMLA, the employee

must prove the following elements: 1) the employee invoked his right to FMLA-

qualifying leave, 2) the employee suffered an adverse employment action, and 3)

the adverse action was causally related to the employee's invocation of his FMLA

rights.[71]  Unlike interference claims, retaliation claims require proof of the

employer's retaliatory intent; "[a]ccordingly, claims based on circumstantial

evidence have been assessed under the burden-shifting framework established

in *McDonnell Douglas Corp. v. Green*.[72],[73]

Plaintiff disputes the Report and Recommendation's finding that he failed to

show that Defendant's legitimate, non-discriminatory reasons were pretext.  The

Court engaged in an analysis above concerning Plaintiff's repeated failure to show

pretext.  In support of his FMLA retaliation claim, Plaintiff raises additional

arguments of pretext.[74]  Like the Report and Recommendation, however, the Court

finds that, even when viewing all presented evidence in the light most favorable,

referenced evidence of pretext would not allow a factfinder "reasonably to infer"

that his termination bears a causal connection with his request for FMLA

paperwork or taken FMLA leave.

---

[70] *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009).
[71] *Lichtenstein v. University of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (*citing Erdman,* 582 F.3d at 508–09).
[72] 411 U.S. 792 (1973).
[73] *Lichtenstein*, 691 F.3d at 302.
[74] Objections, at 88-90.

Therefore, having reviewed *de novo* Plaintiff's objections to the Report and Recommendation's findings, the Court finds no error and thus will grant summary judgment as to Plaintiff's interference and retaliation FMLA claims.

## IV.    CONCLUSION

Based on the above discussion and analysis, the Court adopts in its entirety the Report and Recommendation of Magistrate Judge Schwab.  Defendant PPL's Motion for Summary Judgment is granted.  Defendant PPL's Motion to Preclude Plaintiff's Vocational Expert is denied as moot.

An appropriate Order follows.


BY THE COURT:


  s/ Matthew W. Brann
Matthew W. Brann
United States District Judge